UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARLON J. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  11-0892 (ESH) |
| | ) | |
| AMALGAMATED TRANSIT UNION | ) | |
| LOCAL 689, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Marlon J. Harris, proceeding *pro se*, brings this action against Amalgamated Transit Union Local 689 ("Union") seeking reinstatement to his position as an Electrical Mechanic C with the Washington Metropolitan Area Transit Authority ("WMATA").  Before the Court is the Union's motion to dismiss.  For the reasons set forth herein, the Union's motion will be granted.

### BACKGROUND

Under the collective bargaining agreement ("CBA") between WMATA and Local 689 of the Amalgamated Transit Union, an employee in plaintiff's position is assessed points for unscheduled absences according to the "Attendance Report Procedures" for Local 689. WMATA's Mot. for Summ. J. ("WMATA Mot."), Ex. A (CBA) & B (Attendance Report Procedures), *Harris v. WMATA*, No. 11-cv-0891 (D.D.C. July 6, 2011).[1]  On October 26, 2009,

---

[1] The factual background for the allegations in plaintiff's complaint is set forth in greater detail in filings in plaintiff's related case against WMATA.  *See Harris v. WMATA*, No. 11-cv-0891 (D.D.C. Sept. 9, 2011).  Plaintiff did not dispute any of these facts.

WMATA discharged plaintiff because he exceeded the maximum number of points allowed during a 365-day period. WMATA Mot., Statement of Materials Facts ¶ 1 ("WMATA Facts"). Plaintiff filed a grievance challenging his termination. WMATA Facts ¶ 2. The grievance process ended on March 3, 2010, when the Union and WMATA entered into a "last chance" settlement agreement. *Id.* ¶ 2; WMATA Mot., Ex. C, ¶ 3 ("Settlement Agreement"). The terms of the settlement provided that plaintiff would be reinstated, but that for the ensuing six-month period he would be "automatically terminated from employment with WMATA" for "any violations under the [Attendance Report Procedures]." WMATA Facts ¶ 3; Settlement Agreement ¶ 3. The Settlement Agreement was signed by representatives of WMATA and the Union. WMATA Mot., Ex. C, at 2.

Plaintiff returned to work on May 13, 2010, but after he reported late on June 29, 2010, he was terminated for violating the Attendance Report Procedures and the Settlement Agreement. WMATA Facts ¶ 3; WMATA Mot., Ex. D. Plaintiff filed a new grievance, which was denied at Steps 1-4 of the grievance process established by the collective bargaining agreement. CBA § 104(b); WMATA Facts ¶ 4; WMATA Mot., Exs. E-I. After receiving the fourth step denial of plaintiff's grievance, on July 27, 2010, the Union opted not to demand arbitration. WMATA Facts ¶ 5; CBA § 104(b).[2]

On May 13, 2011, plaintiff filed the above-captioned suit against the Union. His complaint, in its entirety, stated:

> I was wrongfully terminated from my job as an Electrical Mechanic C for

---

[2]Under the CBA, Step 5 of the grievance process gives the Union to right to invoke arbitration if it "is not satisfied with the Step 4 decision." CBA, § 104(b). The Union had sixty calendar days after receipt of the Step 4 decision to invoke arbitration. *Id.*

2

      the Washington Metropolitan Area Transit Authority (WMATA). I went to my
Union Local 689 to rectify this matter. After being out of work for six months, I
was called by WMATA and told to come in for a physical. I did and passed and
then began asking when I would return to work. I was then told by WMATA that
the Union would inform me on my return date. I called the Union and asked
when I was to return to work and was told that they though[t] I was already at
work. I informed them that I was not. They told me to call back and they would
get to the bottom of the situation. After an additional two months, I was called
and told to return to work. I did return to work and two months later I was
terminated again due to an agreement that was made with management that I had
no knowledge or had ever been informed of such agreement. I am requesting a
jury trial.

      I would like to appeal the agreement made by my Union since I did not
sign it and was never made aware of it. I feel that I should not be held
responsible for an arrangement that I did not receive, sign nor agree to it[sic]. I
would like the reinstatement of my position as an Electrical Mechanic C for
WMATA with all benefits and back pay.

(Compl. at 1-2) (emphasis added).[3] The Union moved to dismiss plaintiff's complaint. (Union

Mot. to Dismiss, July 29, 2011 ["Union Mot."]). Plaintiff responded on August 26, 2011. (Pl.'s

Resp. to Union Mot. to Dismiss ¶ 1, Aug. 26, 2011 ["Pl.'s Resp."].)[4]

## ANALYSIS

      The Union has moved to dismiss plaintiff's complaint for failure to state a claim, *see* Fed.
R. Civ. P. 12(b)(6), for failure to join WMATA as a party under Rule 19, *see* Fed. R. Civ. P.
12(b)(7), for failure to exhaust internal union appeals and on the ground that it cannot be liable
for damages stemming from WMATA's allegedly wrongful conduct. (Union Mem. at 1.) As
plaintiff's complaint will be dismissed for failure to state a claim, there is no need to address the
merits of the Union's alternative arguments.

---

[3] Plaintiff filed his case against WMATA at the same time. *See supra* n.1.

[4] Plaintiff's response is titled a "statement of material facts." (Pl.s' Resp. at 1.)

**I.     LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" such that a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  In ruling on a 12(b)(6) motion, a court may consider facts alleged in the complaint, documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim. *U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 24-25 (D.D.C. 2010).

**II.    BREACH OF THE DUTY OF FAIR REPRESENTATION**

Although plaintiff's complaint does not identify a specific legal basis for his claim against the Union, the Court will construe it as alleging a breach of the duty of fair representation under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, as plaintiff is challenging the Union's settlement of his grievance proceeding after he was first terminated by WMATA.  *See, e.g.*, *Ramey v. Int'l Bhd. of Elec. Workers*, 580 F. Supp. 2d 44, 47-48 (D.D.C. 2008) (construing claim for conspiracy against union as one for breach of the duty of fair representation because "[t]o the extent that the Union had a duty to [plaintiff], that duty is defined . . . by a collective bargaining agreement . . . as well as applicable federal statutes," and is, therefore, governed by § 301 of the LMRA); *Price v. Union Local 25*, No. 10-1865, 2011 WL 2144564, at *2-*3 (D.D.C. June 1, 2011) (where plaintiff made no "specific legal claim," court construed his complaint as asserting a duty of fair representation claim because it alleged that his

union "arbitrarily ignore[d] a meritorious grievance or process[ed] it in perfunctory fashion") (quoting *Vaca v. Sipes*, 386 U.S. 171, 191 (1967)).

As an employee's exclusive bargaining representative, a union has "a statutory duty fairly to represent" that employee. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). However, "[a] claim for breach of the duty of fair representation really consists of 'two [intertwined] causes of action,' one against the employer for breach of the [collective bargaining agreement] and the other against the union 'for breach of the union's [duty of fair representation], which is implied' from the NLRA." *Cephas v. MVM, Inc.*, 520 F.3d 480, 485 (D.C. Cir. 2008) (quoting *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164-65 & n.14 (1983)). The employee may bring such a "hybrid" action "against the employer, the union, or both, 'but the case he must prove is the same.'" *Id.* (quoting *DelCostello*, 462 U.S. at 165). In any such case, "the employee must show [that] (1) the union breached its [duty of fair representation]; and (2) the employer breached the [collective bargaining agreement]." *Cephas*, 520 F.3d at 485; *see United Parcel Serv. Inc.,* 451 U.S. 56, 67 ("employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union" (quoting *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570-71 (1976)).

### III.  PLAINTIFF DOES NOT STATE A CLAIM FOR BREACH OF THE DUTY OF FAIR REPRESENTATION

Plaintiff alleges that the Union breached its duty of fair representation because it reached a "settlement agreement" with WMATA that plantiff "never ratified," "never signed," and "never received." (Pl.'s Resp. ¶ 1; Compl. at 1 ("I would like to appeal the agreement made by my Union since I did not sign it and was never made aware of it. I feel that I should not be held responsible for an arrangement that I did not receive, sign nor agree to . . . .").)

In order to state a claim against a union for breach of the duty of fair representation, a plaintiff must allege that the union represented the employee "in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello*, 462 U.S. at 163-64; *see also Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29, 31 (D.C. Cir. 1995)  "Mere negligence" does not constitute a breach of the duty of fair representation. *Brown v. Gino Morena Enters.*, 44 F. Supp. 2d 41, 44-45 (D.D.C. 1999). Rather, "the Union breaches its duty only when its behavior is so far outside a wide range of reasonableness that it is wholly irrational or arbitrary, and it will be deemed to have acted in bad faith only when there is "substantial evidence of fraud, deceitful action, or dishonest conduct." *Payne v. Giant Food, Inc.*, 346 F. Supp. 2d 15, 20 (D.D.C. 2004) (internal quotation and citations omitted); *see Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n*, 966 F. Supp. 4, 7 (D.D.C. 1997); *Local 300, Nat'l Postal Mail Handlers Union v. Nat'l Postal Mail Handlers Union*, 764 F. Supp. 199, 206–07 (D.D.C. 1991); *see also Brown v. Gino Morena Enters.*, 44 F. Supp. 2d 41, 44-45 (D.D.C. 1999) ("Because . . . the very nature of collective bargaining requires an agent to balance interests that quite often are contradictory, it is clear that a wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents." (internal citations and quotations omitted)).

In addition, it is well-established that "a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settle[s][a] grievance short of arbitration." *Vaca*, 386 U.S. at 192; *see also Lewis v. Greyhound Lines-East*, 555 F.2d 1053, 1055 (D.C. Cir. 1977) ("[a union] possesses discretion to pursue only those grievances it fairly considers to be meritorious"); *Plain v. AT & T Corp.*, 424

F. Supp. 2d 11, 21 n.12 (D.D.C. 2006) ("a union does not breach its duty of fair representation merely because it does not process every grievance to the final step of grievance or arbitration procedures.") "Indeed, recognizing that a union is the collective-bargaining agent of individual employees, the Board has made it clear that it will defer to grievance settlements even when a grievant objects to the settlement." *Titanium Metals Corp. v. N.L.R.B.*, 392 F.3d 439, 448 (D.C. Cir. 2004); *see also Brown*, 44 F. Supp. 2d at 45 ("union's settlement of a grievance does not constitute a breach of the duty of fair representation simply because the union does not obtain the full relief sought or because the affected union member is not satisfied with the terms of the settlement").

Finally, "absent specified rights under a collective bargaining agreement, bargaining unit employees have no right to participate in contract grievance proceedings." *Titanium Metals*, 392 F.3d at 448 (citing *Plumbers & Pipefitters Local Union No. 520 v. N.L.R.B*, 955 F.2d 744, 753-54 (D.C. Cir. 1992)). Thus, a union failure's to inform an employee of the precise terms of a settlement agreement cannot, as a matter of law, state a claim for breach of the duty of fair representation. *Id.* As explained by the Court of Appeals in *Titanium Metals*, that such an argument is "specious" because "[e]ven if [the employee] had been notified of the precise details of the settlement, he could have done nothing to change it. The employer and union are the parties to the collective bargaining agreement and only they - not individual employees - determine how to interpret and enforce the agreement." *Id.*

Applying these standards to the alleged facts, the Court must conclude that plaintiff's complaint does not state a claim for breach of duty of fair representation against Local 689. The only allegation plaintiff makes that faults the Union's representation of him is that the Union did

not inform him of or obtain his consent to the Settlement Agreement.  Plaintiff does not allege that he has such a right under the CBA, and there is no language in the CBA that would support such an allegation.  Absent such "specified rights," the Union cannot have breached its duty of fair representation simply by failing to notify plaintiff of, or obtain his consent to, the Settlement Agreement.  *Titanium Metals*, 392 F.3d at 448.

## CONCLUSION

For the foregoing reasons, the Union's motion to dismiss  will be granted.  A separate Order accompanies this Memorandum Opinion.